IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:20-CV-00025-M

| | | |
|---|---|---|
| IBRAHIMA DIOP, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BMW OF NORTH AMERICA, LLC, | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant BMW of North America, LLC's (hereinafter "BMW") Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) [DE-23]. For the reasons that follow, the motion will be denied.

I.     Factual and Procedural Background

Plaintiff Ibrahima Diop (hereinafter "Diop") filed suit in this court in January 2020 alleging that BMW concealed a defect with his vehicle's N63 engine that caused the engine to consume excessive amounts of oil. *See generally* Compl., DE-1; First Am. Compl., DE-20. Diop purchased a 2011 BMW 750Li on April 25, 2013, from Foreign Cars International in Greensboro, North Carolina, for $65,743.12. DE-20 ¶ 15-16. Diop first noticed the excessive oil consumption within a few months of purchasing the car. *Id.* ¶ 17. When the problem persisted about six months after the car's purchase, Diop complained to a BMW authorized dealer. *Id.* ¶ 18. Diop complained to BMW directly approximately five years after the car's purchase. *Id.* ¶ 21. Diop has spent $17,500 in out-of-pocket expenses associated with the car's excessive oil consumption. *Id.* ¶ 24. The cost to repair the car's engine is estimated at anywhere from $12,500 to $15,000. *Id.* ¶ 23. Diop raises five causes of action in his suit against BMW: (1) breach of warranty pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (hereinafter "MMWA"); (2) breach of implied warranty of merchantability pursuant to the MMWA and N.C. Gen. Stat. § 25-2-314; (3) breach

1

of express warranties, pursuant to N.C. Gen. Stat. § 25-2-313; (4) violation of the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* (hereinafter "UDTPA"); and (5) fraudulent concealment. *Id.* ¶¶ 93-148.

A class action lawsuit raising similar claims regarding BMW's N63 engine was filed in the District of New Jersey in September 2015. *Bang v. BMW of N. Am., LLC*, No. 15-6945, 2016 WL 7042071, at *3 (D.N.J. Dec. 1, 2016). In December 2016, a motion to dismiss the second amended complaint was denied. *Id.* at *1, *8. Court-ordered mediation took place in July and August 2017. Order for Reference to Mediation, *Bang v. BMW of N. Am., LLC*, No. 15-6945 (D.N.J. June 26, 2017), ECF No. 74. The case ended in a class settlement on September 11, 2018. Order Granting Final Approval of Class Action Settlement, *Bang v. BMW of N. Am., LLC*, No. 15-6945 (D.N.J. Sept. 11, 2018), ECF No. 122. Diop opted out of the class action settlement on August 10, 2018. DE-20 ¶ 89.

After opting out of the *Bang* class action but prior to filing suit in the Eastern District of North Carolina, Diop joined thirty-nine plaintiffs from fourteen other states in filing suit in the District of New Jersey on December 3, 2018. *Sarwar v. BMW of N. Am., LLC*, No. 18-16750, 2019 WL 7499157, at *1 n.2 (D.N.J. Nov. 27, 2019); DE-20 ¶ 89. While that case is still ongoing, Diop's individual claims were severed, *Sarwar*, 2019 WL 7499157, at *2. Diop's claims were dismissed without prejudice and the District of New Jersey ordered that "the statute of limitations for any claim asserted in this case is deemed tolled during the pendency of this action and for a period of thirty (30) days from the date of this Order." *Id.* at *3. This timeline was later extended by an additional thirty-one days, through and including January 27, 2020. Order Granting Stipulation to Extend Tolling of Statute of Limitations, *Sarwar v. BMW of N. Am., LLC*, No. 18-16750 (D.N.J. Dec. 18, 2019), ECF No. 45.

2

Diop filed suit in this court on January 21, 2020. DE-1. BMW moved to dismiss the complaint for failure to state a claim. DE-16. By text order dated March 31, 2020, Diop was given up to and including April 22, 2020, to respond to BMW's motion or in the alternative to file an amended complaint. Diop filed a First Amended Complaint on April 21, 2020. DE-20. BMW's original motion to dismiss was denied as moot. DE-22. BMW filed a motion to dismiss the amended complaint on May 5, 2020. DE-23. Diop responded in opposition on May 26, 2020. DE-28. BMW replied in support on June 9, 2020 [DE-29] and the motion is ripe for ruling. In the interim, this court granted a consent motion to stay discovery pending resolution of the motion to dismiss [DE-27] and determined it had subject matter jurisdiction to hear this case [DE-40].

BMW primarily argues that the various applicable statutes of limitations preclude Diop's claims from proceeding and that no tolling doctrines apply to save any claim. Alternatively, BMW argues that (1) Diop has failed to allege the critical element of reliance to support his North Carolina breach of express warranty claim, (2) Diop has failed to plead his UDTPA and fraud claims with the requisite particularity, and finally (3) Diop's UDTPA and fraud claims are barred by the economic loss rule.

II.     Motion to Dismiss Legal Standard

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. Fed. R. Civ. P. 12(b)(6); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

In doing so, the court must accept all well-pled allegations in a complaint as true and must construe all factual allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v.*

3

*Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, a court need not accept a complaint's legal conclusions, elements of a cause of action, and conclusory statements. *Iqbal*, 556 U.S. at 678; *see also Giarratano*, 521 F.3d at 302. Nor must a court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

III. Statute of Limitations Affirmative Defense at the Motion to Dismiss Stage

As a general rule, "a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, see Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). A defendant's statute of limitations affirmative defense can be raised in a Rule 12(b)(6) motion to dismiss; however, it is seldom appropriate to do so. *See Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses."). Accordingly, a statute of limitations defense must "clearly appear[ ] on the face of the complaint." *Id.* In other words, the complaint must clearly allege "all facts necessary to the affirmative defense." *Goodman*, 494 F.3d at 464. When the facts necessary to the affirmative defense are not apparent on the face of the complaint, discovery is appropriate. *See Cruz v. Maypa*, 773 F.3d 138, 146-47 (4th Cir. 2014) (reversing in part the district court's decision to grant the defendant's motion to dismiss because the plaintiff's claims were time-barred and remanding for discovery so the district court could determine if any or all of plaintiff's claims were equitably tolled).

4

A. Warranty-Based Claims

Because the MMWA does not contain a statute of limitations itself, "when evaluating timeliness of claims under the MMWA, courts are directed to use the applicable state law." *Ferro v. Vol Vo Penta of the Ams., LLC*, No. 5:17-CV-194-BO, 2017 WL 3710071, at *2 (E.D.N.C. Aug. 28, 2017). Under North Carolina law, which the parties agree is applicable in this case, a breach of warranty claim for the sale of goods is subject to a four-year statute of limitations. N.C. Gen. Stat. § 25–2–725(1). The limitations period begins to run when tender of delivery is made, unless the goods are sold with a warranty for future performance. *See* N.C. Gen. Stat. § 25–2–725(2). If goods are sold with a warranty for future performance, the period runs from the date on which the breach is or should have been discovered. *Id.*

Here BMW's promise to repair or replace defective components for a limited period of time is not the same as a warranty that a product will be free from defects. Thus, it is not a future performance warranty and the accrual occurred upon the date of delivery. *Compare Haywood Street Redevelopment Corp. v. Harry S. Peterson, Co.*, 120 N.C. App. 832, 836, 463 S.E.2d 564, 566 (N.C. Ct. App. 1995), *review denied* 342 N.C. 655, 467 S.E.2d 712 (N.C. 1996) (finding that a warranty which provided that waterproofing would be free of certain defects for period extending into future constituted a prospective warranty, guaranteeing future performance) *with Cohan v. Pella Corp.*, Nos. 2:14-mn-00001-DCN, 2:14-mn-03704-DCN, 2015 WL 6465639, at *10 (D.S.C. Oct. 26, 2015) ("While a warranty that states that the product will be free from defects in materials and workmanship for a period of five years explicitly extends to future performance, a warranty that states 'we promise to repair the product if it malfunctions within the first five years' does not explicitly guarantee the future performance of the goods."); *see also Fairchild v. Kubota Tractor Corp.*, No. 1:18CV69, 2018 WL 4038126, at *5 (W.D.N.C. Aug. 23, 2018) (concluding the same). The four-year statute of limitations therefore accrued on date of purchase and delivery of the car.

5

Diop purchased his car on April 25, 2013. DE-20 ¶ 15. The statute-of-limitations for Diop's warranty-based claims expired on April 25, 2017, unless any tolling doctrines apply. Diop has argued, among other doctrines, that fraudulent concealment and equitable tolling apply to bar BMW's assertion of a statute-of-limitations defense, premised on the contention that BMW actively concealed the defective engine and made material omissions and misrepresentations to induce customers, such as Diop, to purchase their vehicles.

B. UDTPA & Fraud Claims

An alleged violation of the UDTPA "shall be barred unless commenced within four years after the cause of action accrues." N.C. Gen. Stat. § 75-16.2. When a UDTPA claim is based on alleged fraudulent conduct, the cause accrues "and the limitations clock starts running—at the time that the fraud is discovered or should have been discovered with the exercise of reasonable diligence." *Dreamstreet Invs., Inc. v. MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016) (internal quotations and citations omitted). Claims for fraud in North Carolina must be brought within three years of their accrual. N.C. Gen. Stat. § 1-52(9). Fraud claims "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.*

On the face of the amended complaint, there is insufficient information to determine the accrual date of Diop's UDTPA and fraud claims. Diop reports that he noticed excess oil consumption "[w]ithin a few months" of purchasing his vehicle in April 2013. DE-20 ¶¶ 15, 17. The amended complaint suggests that he attempted to exercise due diligence by visiting a BMW dealer in the fall of 2013 to identify the root cause of his vehicle's excessive oil consumption and in response was informed that his vehicle was operating normally. *Id.* ¶¶ 18-20. Diop has also cited online forum posts from BMW enthusiasts suggesting the widespread knowledge of the N63 engine's oil-consumption issue dating as far back as 2011. *Id.* ¶¶ 44-47. Although Diop alleges

6

Case 5:20-cv-00025-M   Document 41   Filed 01/06/21   Page 6 of 11

that discussion of the N63 engine was a "hot topic," *id.* ¶ 46, the court cannot conclude that Diop was knowledgeable of, or even had access to, such discussions or other information which would lead him to believe that his engine had a defect.

Accordingly, these facts alone are insufficient for the court to determine when the UDTPA and fraud claims accrued and thereby determine when the statutes of limitations expired. The possibility that tolling could apply to save all of Diop's claims is an additional reason why it is too early to rule on BMW's statute-of-limitations argument without more information. Therefore, the court will deny without prejudice BMW's motion and allow this case to proceed to limited discovery so the parties may fully uncover the facts that may give rise to a statute-of-limitations defense and the applicability of tolling doctrines.

IV. BMW's Alternative Arguments for Dismissal

The court has considered BMW's alternative arguments for dismissal and finds them unpersuasive. The court addresses each in turn.

A. Specific Reliance

To state a claim for breach of an express warranty under North Carolina law, a party must show "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." *Harbour Point Homeowners' Ass'n, Inc. ex rel. Bd. of Directors v. DJF Enters., Inc.*, 206 N.C. App. 152, 162, 697 S.E.2d 439, 447 (N.C. Ct. App. 2010) (citation omitted). BMW argues that Diop has failed to sufficiently allege the second required element, his reliance on the express warranty, and that he instead alleges only "legal trigger words," such that the claim should be dismissed. DE-24 at 11-12. The court disagrees.

7

In *Maxwell v. Remington Arms Co.*, the plaintiff brought a claim for breach of warranty related to the purchase of two firearms that were recalled by the manufacturer. No. 1:10CV918, 2014 WL 5808795, at *1 (M.D.N.C. Nov. 7, 2014). The plaintiff did not specify where, when, or from whom he bought the firearms, the price he paid, the terms of the warranty, or how he relied on the warranty. *Id.* at *1, *4. The court dismissed the claim, finding the plaintiff failed to adequately allege the reliance element. *Id.* at *4.

In *Ford Motor Credit Co. v. McBride*, by contrast, a buyer claimed breach of express warranty when he discovered that the vehicle he purchased had a defective passenger seat that continuously fell into a reclining position. 257 N.C. App. 590, 591-92, 811 S.E.2d 640, 643-44 (N.C. Ct. App. 2018). At the time of purchase, the buyer informed the seller that he was in the market for a personal-use vehicle. *Id.* at 596, 811 S.E.2d at 646. The seller told the buyer that the vehicle could safely transport multiple people at the same time, that the vehicle was free of mechanical defects, and gave a written warranty for thirty-six months or 36,000 miles. *Id.* The buyer alleged that he relied on these statements and the warranty and that he would not have purchased the vehicle without these representations. *Id.* The court found these allegations, taken as true, sufficient to state a claim. *Id.*

Here, Diop alleges multiple instances of reliance on the "New Vehicle Limited Warranty." First, Diop alleges that prior to purchasing the vehicle, he relied on the representations contained within the "New Vehicle Limited Warranty," including representations that BMW would repair an engine defect, and that this was material to his decision to purchase. DE-20 ¶ 26. Diop goes on to specifically reference the four-year/50,000-mile warranty to repair or replace any of the vehicle's defective components. *Id.* ¶ 27. Finally, Diop alleges he relied on the warranty during his purchase and considered it the "basis of the bargain." *Id.* ¶ 111. These allegations, taken as

8

true, are specific enough to demonstrate reliance at the pleading stage. As such, BMW's motion to dismiss Diop's breach of express warranty claim for failure to state a claim will be denied.

B. Pleading with Particularity

BMW argues that Diop fails to plead his UDTPA and fraud claims with the requisite particularity. DE-24 at 13-15. The Federal Rules of Civil Procedure create a heightened pleading standard for claims brought in federal court based on fraud or mistake, including such claims brought pursuant to state law. *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 725-26 (M.D.N.C. 2015). Under this rule, parties alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Parties must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). These requirements extend to claims under the UDTPA when such claims are predicated on an underlying fraud. *Topshelf*, 117 F. Supp. 3d at 731-32.

The rationale behind this heightened pleading standard is to give a defendant sufficient notice of the claim to permit him to formulate a defense, to protect against frivolous suits, to eliminate suits where all the fraud facts are learned after discovery, and to protect defendants from harm to their goodwill and reputation. *Humana, Inc. v. Ameritox, LLC*, 267 F. Supp. 3d 669, 676-77 (M.D.N.C. 2017) (citing *Harrison*, 176 F.3d at 784). "Consequently, a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which it will have to prepare a defense at trial, and (2)

9

that plaintiff has substantial prediscovery evidence of those facts." *Id.* (internal quotations, bracket, and citation omitted).

Mindful of the Fourth Circuit's instruction in *Harrison* and taking all of the allegations in the amended complaint as true for purposes of this motion to dismiss, the court is satisfied that Diop has pleaded fraudulent concealment and the fraud underlying his UDTPA claim with sufficient particularity. Diop alleges the BMW knew of the N63 engine issues as early as 2008. DE-20 ¶ 5, 49-54, 58-62, 66. Despite this knowledge, BMW took steps to conceal this from Diop and other customers by *inter alia* directing dealers to describe the excessive oil consumption as "normal," *id.* ¶ 19, issuing a technical service bulletin in June 2013 that instructed technicians to add double the amount of engine oil to vehicles with N63 engines, *id.* ¶ 51, and launching the "Customer Care Package" that reduced the recommended oil-change interval, *id.* ¶ 60. BMW's motion to dismiss Diop's UDTPA and fraudulent concealment claims will be denied.

### C. Economic Loss Rule

BMW argues that Diop's claims of fraudulent concealment and violations of the UDTPA are barred by the economic loss rule because Diop has not alleged that BMW breached a duty separate from those required of it under the relevant warranties. DE-24 at 15-17. North Carolina has adopted the economic loss rule, which prohibits the purchaser of a defective product from using tort law to recover for economic losses. *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 401-02, 499 S.E.2d 772, 780 (N.C. Ct. App. 1998). The Fourth Circuit has counseled that it is not the place of a federal court sitting in diversity to "create or extend the North Carolina common law." *Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.*, 506 F.3d 304, 315 (4th Cir. 2007). Whether North Carolina courts would apply the economic loss rule to UDTPA claims is very much an open question and as such the Fourth

Circuit specifically declined to wade into the province of state courts to make such a ruling. *See Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 n.5 (4th Cir. 2012) ("Furthermore, the North Carolina courts have never addressed whether UDTPA claims are subject to the ELR, and in the absence of such direction, we are well-advised to rely on other grounds."). This court declines to rule on these claims at this time. BMW's motion to dismiss Diop's UDTPA and fraudulent concealment claims pursuant to the economic loss rule will held in abeyance pending resolution of the statute-of-limitations issues.

V. Conclusion

BMW's Motion to Dismiss [DE-23] is DENIED WITHOUT PREJUDICE AND THE PARTIES SHALL TAKE DISCOVERY FOR NINETY DAYS LIMITED TO THE ISSUES OF STATUTE OF LIMITATIONS AFFIRMATIVE DEFENSES AND TOLLING. It is further ORDERED that BMW MAY RENEW ITS MOTION TO DISMISS ON THIS BASIS ON OR BEFORE MAY 6, 2021.

SO ORDERED this the 6th day of January, 2021.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE